IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-389-FL

| | |
|---|---|
| ASHLEY OWENS and NINA OWENS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| DIXIE MOTOR COMPANY, JANET ) | |
| PIERCE, ANTWAND CHERRY, and ) | |
| WESTERN SURETY CO., ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on remaining defendants' two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed August 13, 2012 (DE 27, 29).[1] Defendants Dixie Motor Company ("Dixie Motor") and Janet Pierce (collectively "Dixie Motor defendants") have moved to dismiss punitive damages and claims for infliction of emotional distress, and defendant Western Surety Co. ("Western") has moved to dismiss the sole claim against it for a surety bond. Plaintiffs have responded to both motions. Defendant Western has replied to the response directed towards its motion. The issues raised are now ripe for ruling. For the following reasons, the court denies both motions.

---

[1] Defendant Antwand Cherry was duly served with summons and complaint but failed to respond. Default was entered against defendant Cherry by order on August 28, 2012. Defendant Equifax Information Services, LLC, answered the complaint, but the parties subsequently stipulated to its dismissal on April 12, 2013.

## STATEMENT OF THE CASE

Plaintiffs, who are mother and daughter (Nina Owens is Ashley Owens's mother), originated this action by complaint filed June 28, 2012, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, Identity Theft Protection Act ("NCITPA"), N.C. Gen. Stat. § 75-60 *et seq.*, and tort law. The complaint sets out eleven (11) separate counts, of which only five are in contention here.

The Dixie Motor defendants have moved to dismiss punitive damages for counts five through eight of the complaint, namely: violation of UDTPA as to defendant Dixie Motor; negligence *per se* for failure to comply with Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*, as to defendant Dixie Motor; Breach of express and implied contractual duty to safeguard confidential financial information as to defendant Dixie Motor; and infliction of emotional distress as to both defendants Dixie Motor and Pierce. Furthermore, they seek to dismiss count eight, infliction of emotional distress, in its entirety on the theory that plaintiffs have not pleaded sufficiently the element of severe emotional distress under North Carolina law. Defendant Western seeks to have the sole count against it, count nine for liability of a surety, brought solely on behalf of plaintiff Nina Owens, dismissed on the basis that plaintiff Nina Owens is not a purchaser as required by the statute.

## STATEMENT OF FACTS[2]

Plaintiffs are residents of Plymouth, North Carolina. Compl. ¶¶ 5-6. As noted, plaintiff Nina Owens is the mother of plaintiff Ashley Owens. Compl. ¶ 7. Defendant Dixie Motor is a North

---

[2] As discussed <u>infra</u>, the alleged facts in the complaint are accepted as true for the purpose of evaluating defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Carolina corporation with its principal place of business in Williamston, North Carolina. Compl. ¶ 8. It is a motor vehicle dealership, which arranges and provides financing for the purchase of vehicles, as a service to customers and potential customers. Compl. ¶¶ 9-11.

Defendant Pierce is a resident of Windsor, North Carolina, employed by defendant Dixie Motor as its finance manager. Compl. ¶¶ 12-13. Defendant Western is a South Dakota corporation with its principal place of business in Chicago, Illinois. Compl. ¶ 21. It is licensed by the North Carolina Department of Insurance, and has provided motor vehicle surety bonds to various North Carolina motor vehicle dealers, including defendant Dixie Motor. Compl. ¶ 22.

At some unspecified date prior to October 2011, plaintiff Nina Owens purchased a vehicle through defendant Dixie Motors and later returned to defendant Dixie Motor for repairs on that vehicle. Compl. ¶ 29. When plaintiff Ashley Owens became interested in buying a car, she chose to visit defendant Dixie Motor's dealership. Compl. ¶ 30. Plaintiff Ashley Owens applied for financing on a Dodge Charger through defendant Dixie Motor on October 29, 2011. Compl. ¶¶ 30-31.

Defendant Pierce handled plaintiff Ashley Owens's finance application, which required her to provide personal information, including Social Security Number ("SSN"), birth date, home address, two phone numbers, income and employment details, and a copy of her drivers' license. Compl. ¶¶ 32-35. Defendant Pierce used that information to request a credit report, containing further personal information, which she printed. Compl. ¶¶ 39-42. Defendant Pierce then tried to persuade plaintiff Ashley Owens to sign up for credit repair services, which plaintiff Ashley Owens declined. Compl. ¶¶ 44-45. Ultimately the Dixie Motor defendants rejected her credit application. Compl. ¶ 46.

Defendant Dixie Motor has a privacy policy which claims to "ensure your private information is kept private and only shared with those companies who are authorized by either yourself or as allowed or required by law." Compl. ¶ 36. According to the policy, personal information is safeguarded and employees of Dixie Motor are prohibited "from giving information about you to anyone in a manner that would violate any applicable law or our privacy policy." Compl. ¶ 37. This policy is on defendant Dixie Motor's public website. Compl. ¶ 38. Plaintiff Ashley Owens believed that after the Dixie Motor defendants rejected her credit application, they would safeguard and properly dispose of the personal information she gave them. Compl. ¶ 47.

Defendant Pierce subsequently disseminated the personal information in the loan application file of plaintiff Ashley Owens by sending over twenty (20) pages of documents to a prison inmate named Antwand Cherry, a defendant in this action. Compl. ¶¶ 83, 86. Plaintiff Ashley Owens did not know how a prison inmate could have obtained her personal identifying information. She began receiving phone calls from defendant Cherry around Thanksgiving of 2011 on both her home and cell phones. Compl. ¶¶ 61-64. The inmate asked for plaintiff Ashley Owens by name, identified himself as "Mouse," and informed her that he had her SSN and other personal information. Compl. ¶¶ 67-68. Defendant Cherry claimed that his friend Janet had mailed him all of plaintiff Ashley Owens's personal information, and asked her to call Janet. Compl. ¶¶ 69-74. Plaintiff Ashley Owens later discovered that the inmate's friend Janet was defendant Pierce. Compl. ¶ 75.

The conversations between plaintiff Ashley Owens and defendant Cherry led her to fear that, among other things, her information would get out to other prisoners and that defendant Cherry or another would get out of prison, come to her home, and commit crimes against her. Compl. ¶¶ 76-79. She reported the matter to the police on December 6, 2011, which led them to interview

4

Case 5:12-cv-00389-FL   Document 60   Filed 07/11/13   Page 4 of 11

defendant Pierce. Compl. ¶¶ 80-81. At that time, defendant Pierce told the police, without authorization, about the content of plaintiff Ashley Owens's credit report. Compl. ¶¶ 87-88.

Subsequently, plaintiffs discovered that defendant Pierce had also pulled plaintiff Nina Owens's personal identifying information and used it to falsify a credit application, for which a report was illegally obtained. Compl. ¶¶ 97-99. That information was also sent to defendant Cherry. Compl. ¶¶ 96-97. Plaintiff Nina Owens gave her personal identifying information to defendant Dixie Motor when she purchased her vehicle. Compl. ¶ 202. Dixie Motor then used that information to create a falsified credit application without her permission or knowledge, and forwarded that information to defendant Cherry. Compl. ¶¶ 96-97, 204.

Since plaintiffs began investigating this matter, strangers have come to plaintiff Nina Owens's home on several occasions and vandalized her car. Compl. ¶ 105. As a result of all of the above conduct, plaintiffs fear harm will come to them from the criminal associates of defendant Cherry and defendant Pierce, or one of the approximately six-hundred and forty (640) inmates at the facility that houses defendant Cherry. Compl. ¶¶ 103-110. Plaintiffs further fear future attempts at identity theft, and have undertaken measures to protect themselves. Compl. ¶¶ 107, 111-113. Plaintiffs have also suffered emotional distress, anxiety, depression, neurosis, phobia, and paranoia from dealing with this matter. Compl. ¶¶ 114-118, 198.

## DISCUSSION

A.   Standard of Review

Defendants challenge the pleadings, in part, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In evaluating their motion, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the

5

complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard is met where "the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 255 (quoting Iqbal, 556 U.S. at 678).

"Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 556 U.S. at 679). In evaluating the factual content necessary to survive a motion to dismiss, however, the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citing Iqbal, 556 U.S. at 678; Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)) (internal quotation marks omitted).

"At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). If the properly considered factual allegations, viewed in context, fail to "nudge[] . . . claims across the line from

6

conceivable to plausible, the[] complaint must be dismissed." Twombly, 550 U.S. at 570. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of [that] line." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).

B.      Analysis of Dixie Motor Defendants' Motion

  1.      Infliction of Emotional Distress

In North Carolina, intentional infliction of mental distress consists of: (1) extreme and outrageous conduct; (2) that is intended to cause severe emotional distress to another; and (3) that does in fact cause severe emotional distress to another. Holloway v. Wachovia Bank & Trust Co., 339 N.C. 338, 351, 452 S.E.2d 233, 241 (1994). Negligent infliction of emotional distress requires the plaintiff to allege that: (1) defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause plaintiff severe emotional distress; and (3) that conduct did in fact cause plaintiff severe emotional distress. McAllister v. Ha, 347 N.C. 638, 645, 496 S.E.2d 577, 582-83 (1998). "Severe emotional distress" is defined by the same standards in both causes of action, and means "any emotional or mental disorder, such as, for example neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by [trained] professionals." Holloway, 339 N.C. at 354-55, 452 S.E.2d at 243.

In their motion, Dixie Motor defendants allege that plaintiffs have failed to allege "severe emotional distress" where no allegation of diagnosis or treatment by a medical professional for their alleged emotional distress appears. Courts have rejected the contention that a medical diagnosis is required to maintain a cause of action for infliction of emotional distress. See, e.g., Russ v. Causey, 732 F.Supp.2d 589, 606 (E.D.N.C. 2010) ("An actual diagnosis by a medical professional is not

required to assert severe emotional distress."); Spencer v. Town of Chapel Hill, 290 F.Supp.2d 655, 661 (M.D.N.C. 2003) (recognizing that a claim for emotional distress does not require a formal diagnosis as to a particular disorder). Where plaintiffs allege fear, anxiety, depression, neurosis, phobia and paranoia as a result of defendants' conduct, plaintiffs state sufficient facts to show "severe emotional distress" under North Carolina law. See Compl. ¶ 198; Holloway, 339 N.C. at 354-55, 452 S.E.2d at 243. Therefore, Dixie Motor defendants' motion as to this part is denied.

2. Punitive Damages

Punitive damages are a remedy, and not a separate cause of action to be evaluated and dismissed before the underlying claims. See Fed. R. Civ. P. 12(b)(6) (allowing the assertion of a defense for "failure to state a *claim*") (emphasis added); Rohlik v. I-Flow Corp., No. 7:10-CV-173-FL, 2011 WL 2669302, at *4 (E.D.N.C. July 7, 2011) (finding that it was premature to foreclose punitive damages when considering a motion to dismiss); Jones v. Wake Cnty. Hosp. Sys., Inc., 786 F.Supp. 538, 547 (E.D.N.C. 1991) ("The question of whether or not a party can recover punitive damages . . . has no bearing on the validity of the cause of action set out in plaintiff's complaint."). At this stage of the proceedings, where at least some surviving claims may lead to punitive damages, the court will not preclude that type of recovery. See Rohlick, 2011 WL 2669302, at *5. Therefore, Dixie Motor defendants' motion as to punitive damages is also denied.

C. Analysis of Defendant Western's Motion

North Carolina requires motor vehicle dealers to furnish surety bonds in order to cover certain losses or damages for purchasers of motor vehicles. N.C. Gen. Stat. § 20-288(e). Furthermore, "*any* purchaser" who has

> suffered *any loss or damage* by the failure of any license holder subject to this subsection to deliver free and clear title to any vehicle purchased from a license

> holder or *any other act* of a license holder subject to this subsection that constitutes a violation of [Article 12] or Article 15 of this Chapter shall have the right to institute an action to recover against the license holder and the surety.

Id. (emphasis added). This law was first enacted in 1977 to protect consumers, pursuant to the state's police power, where "the distribution of motor vehicles is a business which easily could be conducted so as to become a medium of fraud and dishonesty." Butler v. Peters, 52 N.C. App. 357, 360, 278 S.E.2d 283, 285, appeal dismissed, 303 N.C. 543, 281 S.E.2d 391 (1981). The two elements to a claim pursuant to this statute are: "1) the dealer's violation of either article 12 or article 15 of chapter 20 of the General Statutes of North Carolina and 2) the suffering of damages and losses by the consumer." Tomlinson v. Camel City Motors, Inc., 330 N.C. 76, 79, 408 S.E. 2d 853, 855 (1991).

Therefore, a surety is liable to any purchaser of a motor vehicle from a dealer who suffers loss or damages from the dealer's violation of state law. See Ferris v. Haymore, 967 F.2d 946, 950 (4th Cir. 1992). The Fourth Circuit has recognized that N.C. Gen. Stat. § 20-288(e) was intended by the state to grant broad remedies, and "no court has ever held that any purchaser of a vehicle was without a cause of action under the statute." Ferris, 967 F.2d at 950. Indeed, the statute "creates a cause of action against the dealer and surety for *any* purchaser, and [the courts] have neither authority nor reason to narrow the broad class of purchasers protected by the statute's plain language." Id.

In Ferris, plaintiff brought suit in relation to his purchase of a car with an odometer that had been illegally altered. Ferris, 967 F.2d at 949. The surety opposed liability on the basis that it insured only a dealer in the prior chain of custody of the vehicle, and not the dealer who sold plaintiff the car. Construing the term "any purchaser" broadly, however, the Fourth Circuit in Ferris

9

held that even a "downstream purchaser" who had not directly purchased from the dealer, was still "any purchaser" within the meaning of the statute, and entitled to recover on the surety bonds for that dealership, which sold a vehicle with an illegally altered odometer. Id. at 950; see also Tomlinson, 330 N.C. at 80, 408 S.E. 2d at 856 (finding the damages owed by the surety were only those damages suffered by the purchaser in violation of Article 12, with the remainder of damages sought pursuant to a separate provision on punitive damages recoverable from the dealer).

Plaintiff Nina Owens alleges violations of Article 12, including that defendant Dixie Motor engaged in unfair and deceptive practices in violation of N.C. Gen. Stat. § 20-294(6), and false advertising relating to its licensed dealership in violation of N.C. Gen. Stat. § 20-294(7). Defendant Western issued a motor vehicle dealer surety bond on behalf of defendant Dixie Motor. Plaintiff Nina Owens contends that defendant Western is, therefore, liable to her under the bond for damages resulting from defendant Pierce's misuse of her information, which had been provided to defendant Dixie Motor to facilitate her motor vehicle purchase. The statute protects any purchaser of a motor vehicle from damages associated with illegal activity under Article 12 in relation to that motor vehicle purchase. See Ferris, 967 F.2d at 950. Therefore, plaintiff Nina Owens has sufficiently pled a claim against defendant Western pursuant to N.C. Gen. Stat. § 20-288(e).

Defendant Western argues that there was nothing illegal in connection with plaintiff Nina Owens's purchase, which occurred long before her alleged injuries at the hand of defendant Pierce. Therefore, it contends, plaintiff Nina Owens is not "any purchaser" within the meaning of the statute. Def.'s Br. 4 (citing Taylor v. Johnson, 84 N.C. App. 116, 351 S.E. 2d 831 (1987); Fink v. Stallings, 64 N.C. App. 604, 307 S.E.2d 829 (1983); Tripplett v. James, 45 N.C. App. 96, 262 S.E. 2d 374 (1980)).

10

Based on the allegations in the complaint, however, the conduct of defendant Dixie Motor – misusing Nina Owens' personal identifying information to create a false financing application and obtain her credit report, then forwarding those documents to a prison inmate – allegedly resulted from plaintiff Nina Owens's purchase of her vehicle from defendant Dixie Motor. See Compl. ¶¶ 48-60, 202-204; Pls.' Br. Part II. Thus, plaintiff Nina Owens is a purchaser under the terms of the statute, and defendant Dixie Motor has engaged in violations of Article 12, satisfying the statutory requirements for a surety claim under § 20-288(e).

Furthermore, the cases cited by defendant Western, Taylor, Fink, and Tripplett, are easily distinguishable because the parties denied relief in those cases were not purchasers. See Taylor, 84 N.C. App. at 119-20, 351 S.E. 2d at 833-34 (finding that a joint venturer was not a "purchaser" under the ordinary meaning of the word); Fink, 64 N.C. App. at 605, 307 S.E. 2d at 831 (finding that a secured party was not entitled to indemnity from surety on dealer's motor vehicle bond for recovery of balance due from dealer on a motor home sold to a third party); Tripplet, 45 N.C. App. at 99, 262 S.E. 2d at 375 (holding that the statute was not ambiguous in granting a right to recover under the surety bond only to purchasers, and denying recovery on the bond for a wholesale automobile dealer who suffered injury in relation to its *sale* of cars). In sum, under the language of the statute and under North Carolina law, plaintiff has stated a claim for recovery from the surety, and defendant Western's motion to dismiss therefore will be denied.

## CONCLUSION

For the foregoing reasons, Dixie Motor defendants' motion to dismiss is DENIED (DE 29). Defendant Western's motion to dismiss is also DENIED (DE 27).

SO ORDERED, this the 11th day of July, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge